Thank you, Your Honor. May it please the court. My name is Cynthia Everson and I represent the appellate Justin Kelly in this matter that's before the court. We briefed five issues before this court but I'm limited in time and so I'm gonna limit my discussion here today to three of those. First, neither Detective Curl nor Investigator Conner are entitled to qualified immunity in this case for a few important reasons. First, only public officials are entitled to qualified immunity in this case. Second, the District Court asked why Investigator Conner should be considered a public official. In fact, even though this is her burden of proof, she never even argued it until the brief in response to this appeal. Additionally, at no point does the District Court make any findings of fact or conclusions of law as to how Investigator Conner fits the definition of public official. So there's no evidence that these folks are public officials? Well, we're limiting it, Your Honor, just right now specifically to Investigator Conner. Ms. Conner was a an investigator for the State of North Carolina through the Private Protective Services Board. At the time it was a division of the Department of Justice. Now it's a part of the division of the Department of Public Safety. Does that now sound like a public official to you? Well, based on the definition that the North Carolina courts have set forth, no, Your Honor. They've listed a three-part definition for public official based on whether or not the person or the office is a position created by the Constitution or statutes, whether or not that official exercises a portion of the sovereign power, and then whether or not that specific office exercises discretion or performs ministerial duties. For example, social worker, not a public official. Department or the head of the Department of Social Services, public official. School teacher, not a public official. The school superintendent, public official. So the people actually doing the work aren't public officials? Well, under the definition provided by the State, no. And it talks about, and there was evidence in the record about the criteria that the courts have set forth for that definition. The board was asked was her position created by the Constitution or statutes. Its response was no. So what did she do wrong other than be present when an officer made the arrest and that she had participated in internal discussions about there may be a problem with the statutory scheme? Other than that, what did she do wrong? Well, Your Honor, at the summary judgment stage or the motion to dismiss stage, depending on how you read the motion, viewing the facts and the like most favorable to Mr. — to the appellant, she took a gun from him. She had no power to do that. She took a knife from him. She had no power to do that. She's the one who directed the arrest. She had no power to do that. In fact, the evidence in the record is that she had no jurisdiction at all over unlicensed businesses and unlicensed individuals. So viewing the facts and the like most favorable to the appellant shouldn't have even been there. It was undisputed that Calypso Nightclub was Mr. Kelly's employer, or the appellant's employer. It's undisputed they weren't licensed by the Private Protective Services Board. In fact, it's even undisputed that they weren't working in the security guard and patrol profession. That turns — your argument turns qualified immunity on its head. The general principle of qualified immunity, which is a public there, a person there doing something — forget for a second whether or not there's a technical argument as to she's a public official. We're going to hear about that. But it turns on its head that somebody's there and they're just exercised to use objectively good judgment in pursuing that governmental interest that they're charged with. They don't have to know if the statute absolutely covers somebody. They don't have to know absolutely if he is in the employee of the nightclub. He sure looks like it to her, I would guess. He's dressed in a dark outfit with a gun and hanging around the front. That sort of looks like somebody who's there to be a bouncer or to enforce the rules of the club. But she's not charged. That's what qualified immunity does. It lets officials go about their business doing what they're subject to lawsuits and judgments from lawsuits based on some technical issue. Doesn't this sound just like — take it for a second that there is a constitutional violation. We haven't decided that or not. But it sounds like this is custom-made for qualified immunity because the question was what she do wrong. She was just there doing what her job is. Maybe there's some technical argument somebody could make that the statute doesn't cover him, but she doesn't have to be perfect. An official doesn't have to be perfect. That's the point of qualified immunity, isn't it? It is the point of qualified immunity for a public official who's — So if she's a public official, then she would be entitled to qualified immunity in your — to you? I still think, Your Honor, there's an argument she was acting outside the scope of her employment. But that's a different argument. In fact, your first argument was a little confusing to me that she wasn't a public official. You sued her under 1983. So I'm a little bit confused about the point you're making that she's not a public official, at least for some purposes, but she is a public official for some other purposes. Right. And, Your Honor, to answer that question, public employees are oftentimes sued for constitutional violations if they act under the color of state law. And in this particular situation, she was acting under the color of state law. She did all of the things as alleged in the purpose of the 1983 action. And yes, if she was a true public official, and yes, if she was acting within the scope of her employment, qualified immunity would apply. I believe we're conceding that. We're just disputing whether or not she was a public official. Did you argue that in your brief? I do not remember seeing that. And I apologize, Your Honor. Which portion of my statement were you asking? That she was not a public official. Absolutely. We've argued — we have argued that the whole time. It was in both the opening brief and in the reply brief. And just moving forward, Your Honor, with respect to the additional part of the qualified immunity, as to Detective Curl, we've raised the argument as to whether or not this inspection was part of his job. It was — I'm sorry. Did you argue that she was not entitled to qualified immunity because she was not a public official? Was my — and I think I may have been unclear. I apologize. And you did argue that? That's correct, Your Honor. Our position with respect to Investigator Connor that, as has been argued, is that she's not entitled to any form of immunity, primarily because she's not a public official. Correct. You want us to send the case back to let that determination be made? Well, Your Honor, the district court's order is silent on that. They don't provide a discussion at all. No, I'm saying, do you want us to send it back to let the district court judge decide whether or not she's a public official? That would be a possible alternative, Your Honor. Are you conflating — and I'm sorry to keep — are you conflating acting outside the scope of her employment, which is what I understood your argument to be, with being a — not being a public official? No, Your Honor, but that's part of the qualified immunity analysis. So we're saying even assuming she were a public official, if her actions were performed outside the scope of her employment as that public official, then she's still not entitled to qualified immunity. So it's kind of a dual-pronged analysis. It's undisputed that the Private Protective Services Board has no jurisdiction over unlicensed individuals. In fact, the Private Protective Services Board went at great lengths to argue that in the lower pleadings with respect to how — why the appellant wasn't afforded any administrative process. Although, in the record, it's clear that every other person in a factually identical situation was afforded that administrative process. But in any event, with respect to — And she was outside of her scope of employment. Why? Because he — because your client wasn't covered by the statute? That's two different questions, isn't it? It is, Your Honor. And maybe my answer was a little convoluted. I don't know about — I don't know if I'm saying it's convoluted. I'm just — but I'm just trying to clarify this. Why was she — was she outside of her scope of employment, according to you, for any reason other than she was involved in the arrest of your client who you claim was not covered by the statute? Okay. Otherwise, was she — if he had been covered by the statute, was she within her scope of employment? She would have been in her scope of employment if they asked her, does this place have a license and she said no. I didn't ask you all that. I didn't ask you all that. I'm talking about under the facts of this case. Was the only reason she was acting outside the scope of her employment is because you argue, and your argument is, your client was not covered by the statute. Is that it? That puts her outside the scope of employment? It puts her outside the scope of her employment to investigate. Is that the only thing that puts her outside the scope of employment, under these facts? No, Your Honor. I mean, as a — What else? What else? What else? Sure. She contacted the magistrate to make sure he was charged. She was present and assisted in the arrest. She took pictures of him. Was that outside of her scope of employment? The private protective services board and Ms. Conner have all said she has no authority over people who are unlicensed, over businesses. I know that, but that's all based on your view that he — your client's not covered by the statute. Actually, it's not, Your Honor. It's based on the view that he didn't have a license. Not that he wasn't required to, but that he didn't have a license. Wait one second. If, in fact, he had been under the light, under the statute, could she call the magistrate? Could she take a picture of him? Could she do all that? If he had been licensed. Correct. If he was under the statute, this is the hypothetical. If he was clearly covered — not him, put in Mr. X, put in somebody else, Mr. Jones. If he was — same situation, clearly covered by the statute, could she have done everything she did? Talk to the officer about arresting him, take a picture of him, talk to the magistrate and follow through on the process. Could she have done that? Would that have been fine? Technically, a private citizen can do those things legally. So, in that context, I would say she could have done that, but whether or not that was part of her job as an investigator — Actually, would it have been outside of her scope of employment to do that? To go to a site, to take — to be there to take pictures of what's going on because she works for the board that, in fact, regulates this type of activity, call the magistrate judge to be sure that the process is working properly, to be there to talk to the officer to give the officer her advice on whether or not the statute is being violated, is that outside of her scope of employment? It's our position that it is, Your Honor. In part of the attachments that have been submitted in the record, there are some minutes from some of the board's meetings, and they, in fact, admit in some of their public meetings minutes that the only thing they can do when they suspect unlicensed activity is notify the district attorney of the county in which it's happening and issue a cease and desist. By their own admission, that's all they have authority to do for unlicensed activity. So anything else would be outside of that. What about determining whether it's unlicensed activity? By their own admission, they say they don't have jurisdiction to actually do anything unless it's someone who's applying for a license or someone who's licensed. No, no, no. I'm just asking, you said that, as I think I follow you, that it's outside the scope of her employment because it's unlicensed activity. And I was asking, what about in making that determination in the first instance? I'm trying to figure out exactly what your argument encompasses. Sure. Certainly, her verifying whether or not an individual is licensed is within the scope of her employment. Participating in an arrest, we would contend, is not. And I'm going to skip forward to the application of the act, since that's really How did she participate in the arrest? Well, according to the appellant's version of events, she directed it. She told officers to arrest him. She took weapons off of him. She didn't participate in the arrest as physically participate. She just said, he's violating the law. You should arrest him. She physically participated in the arrest. She was present. She put hands on him. She removed a gun from his chest. That's undisputed. The officers even acknowledged that she did that. She, according to his version, she's the one who told them that she wanted him to go to the jail in the paddy wagon, as she phrased it, which was why he was taken to another place, held for an hour. She photographed his weapons. She photographed him. She sent those pictures to her personal e-mail address on more than one occasion. She couldn't even provide an explanation as to why she did that. None of those actions are within the scope of her employment. With respect to the application of the act to him, the act on its face only regulates private protective services professions. In North Carolina General Statute 73CA, it lists those private protective services professions. It is undisputed that appellant was an employee of Calypso Nightclub, which is a business that was not engaged in the security guard and patrol profession, as defined in 74C3A. Appellees have identified no other of those categories of professions listed in 74C3A that he could have fallen under to bring him under the purview of the Private Protective Services Act. Instead, they point to 74C13 as providing additional requirements for armed security guards who work for businesses other than private protective services professions. However, in its title and its purpose and in its definitions, the Private Protective Services Act limits its regulatory. That first, if I understand it correctly, the first sentence says it shall be unlawful for any person performing private protective services duties to carry a firearm in the performance of those duties. I'm sorry, Your Honor, are you reading 74C13? 13A, I thought I was. That's correct, Your Honor, but that specific statute itself also says armed, the title is armed licensees and registered employees. So the business No, no, I'm not asking about what the title says. I'm talking about what the language of the provision says. It shall be unlawful for any person performing private protective services duties to carry a firearm without first having met the qualifications. Why does that apply to him? Well, Your Honor, in that specific section in 74C13A, it first it talks about private protective services. I didn't ask you any of that. I'm just asking, tell me why that looks like to me, I know maybe people hadn't heard that, looks to me on his face that applies to him. Why doesn't that apply to him? Your Honor, it does not apply to him because our position is he wasn't providing private protective services duties as defined when it's in the earlier sections of the Act which deal with the definition of private protective services professions. Additionally with Is private protective services duties defined in the statute? It is not. It is not, Your Honor. It seems to me that there was some confusion about what the law was. And so if that's the case, how do you meet the, you violated a clearly established right if there was confusion at the administrative agency level? Certainly, and I see my time is up, but may I answer your question? Okay. Well, certainly the clearly established problem I would contend is the part that is most difficult in this scenario, depending on how you look at it. Our position, first of all, is that the district court improperly shifted the burden of proving that to appellant when actually Was the law clearly established that your client was not violating it? That's the question. Certainly. It was clearly established? In this situation, we would contend yes. We would contend that on its face that he was not working in a private protective services profession because that definition says it's only for a company or person who contracts out a security guard to another company or person. So on its face, we would contend Anything else beyond that, I'm going to let you come back up. But I just read you the provision of the statute that didn't say anything about a private company. And so the question was in light of that statute, there's at least some confusion. How is it clearly established that your client can be there doing what he's doing and somebody is violating his rights to stop him under the facts of the case? And I would just suggest we'll let you answer that on your reserve time. Thank you, Your Honor. You think about that. Thank you very much. Mr. Gray? May it please the Court, I am Jeff Gray. I am the legal counsel to the Private Protective Services Board and here on behalf of the Board. And I think I can clear some of the questions up that you have. I think Judge Floyd touched on it just a few minutes ago, but everything that has been argued by Mr. Kelly in this case hinges on just a few points that seem to be a misunderstanding as to how this law is structured. And it is very simple. First of all, as you observed in reading 74C-13, nobody, nobody, and I'll say it again, nobody can perform the services of an armed security guard in North Carolina without being registered with our Board. And there is a distinction between licensure and registration. And this is where Ms. Kelly seems to be somewhat confused in all of her arguments. A company is licensed. They are the licensee. They may or may not be armed. We have one-person companies. That's too complicated for me. Why is she a public official? Why is she a public official? Yes, that's her first argument is she's not a public official. She is a public official. If you look at 74C-7, Your Honor, it gives the Secretary the power to investigate violations of the Act. And that includes unlicensed activities. She stated to this Court, we do not have the power to do it. Obviously, if you have the power to investigate violations of the Act, that includes licensed and unlicensed activity. And the Secretary has delegated that duty to Ms. Kelly. She is not an employee, excuse me, Ms. Connor, Ms. Connor is not an employee of our Board. Ms. Connor is an employee of DPS and is represented by the Attorney General's Office, the lady sitting at the council table with us. She is not our employee. She is an employee of DPS, and she has the derivative powers of the Secretary. So you don't want to make the argument for her then, other than what you just said, you're going to let the Attorney General argue for her? No, sir. No, she's not arguing today. It's just the two of us. But what I'm saying is that she's not being represented. She's not our employee. She is an employee of the Secretary of Public Safety, who under 74C-7 has been delegated his duties as a Cabinet Secretary to investigate violations of this law, Your Honor. She's obviously... When a person in her capacity, is it Ms. Connor? Yes, Ms. Connor. When Ms. Connor gets sued, a person in her capacity, who represents them? The Attorney General's Office, Your Honor. Not a private lawyer, but the Attorney General? That's exactly right. I am a private lawyer. You have to let me finish before you talk over me. I know you have a lot to say and I want to hear it, but just for the transcript we have to be sure. But you're saying that the North Carolina Attorney General taxpayer's dollars represents an employee in Ms. Connor's position? Exactly, Your Honor. And she's seated at the council table. I am a private attorney employed by the board on a contract basis every day. Are you happy with that status? I'd like the rate a little higher. I said status. Oh, status. The rate could be a little higher, because I compete with the Attorney General's Office. You've used probable cause to ward off the state law claims. I grant you that it's to the effect of a false arrest and malicious prosecution, that would be true. But what about the potential infliction of emotional distress, abuse of process, negligent hiring, all those? They're not the probable cause. So why shouldn't that be sent back? Because it looks to me like the district judge really didn't deal with that. Right. Well, in other words, I think that he didn't . . .  Pardon? It shouldn't go back, because I think in this instance, there was no more infliction of emotional distress on Mr. Kelly in this instance than there would be on any other person cited and arrested for violation of a misdemeanor. And it was no more intentional than any other arrest. They did not seek him out. He claims that Ms. Kelly knew him, but she says, if you will read her deposition, she did not recognize him. The officers did not seek it out. It was not intentional. It was no different than . . . It doesn't matter at summary judgment, does it? Pardon? What she says doesn't matter at summary judgment. No, no, not at . . . because it's a question of law or . . . well, it's a question of fact, Your Honor, of law or fact. Those facts, I would say, are not in dispute. Well, you just said they were. You said he claims she knew him, and she said she didn't. Well, that doesn't have to do with the question of whether it was intentional or it caused emotional . . . Well, I don't know. It sounds a whole lot like that's where you were going. But you said . . . Well, he has no . . . No. You said they didn't seek him out. They didn't know him. He says they knew him. She knew him, that Ms. Conner knew him, Your Honor. Right. She says it. But there's no more intentional than any other case. You just think that probable cause for the arrest washes everything else out. Not necessarily. It certainly doesn't wash out her constitutional claims. Anyone has the right to challenge a criminal law that is, as you mentioned . . . You're talking about her claims of . . . the claims in the lawsuit, intentional infliction of emotional distress and anything else that Judge Floyd was asking about. You think the probable cause and the prop arrest washes all those . . . Well, there is a finding by two federal judges, well, a federal magistrate judge and a district judge, that there was probable cause, and they seemed to find in related matters, not in this matter, but in related matters, that it did, in fact, it was a lawful arrest and that . . . So that's my question to you is, do you think probable cause washes out all those other causes of action? And the ruling from the federal court judges. A Article III judge and a magistrate judge have both looked at that issue. It appears to me that appellant has . . . The question about whether or not probable cause is a defense to those claims. I was looking at . . . I was going back to Mr. Kelly's . . . The scope of his argument about that, and I'm not seeing anything . . . The facts that led to the . . . that defeated the probable cause determination. Is there more in her argument to support the state law claims other than that? We don't . . . We have not found it. We have not been able to determine anything through depositions or any other matters to show that there is an issue or a question there. You ask all the questions about damages and showing emotional distress and all the issues that you would ask. There is no evidence of that. And it is clear that the judge did not view in this instance that there was a legitimate issue of material fact or law in this suit and in his granting of summary judgment, partial summary judgment. It is quite clear that he looked at the entire record. There are constitutional claims. There are the traditional 1983 claims. There are other state tort type claims in this case. And he looked at these closely. Did the district court address Kelly's argument that the PPS does not apply to him? No, ma'am. He did not. He did not. And that is one for her arguments here is that he failed to address that issue. There was some question of whether it was raised, but it was only partial summary judgment. She claims, if you look at the brief, that she did, in fact, raise it and he failed to address it. But it was there, of course, on a declaratory judgment. And why would we not remand for consideration of that issue? Well, I think he determined that issue because it is quite clear, I think, to anyone reading this statute. Do you think it's subsumed in what he found? Is that your argument? I do, Your Honor. It is quite clear. All of the issues here, the equal protection, that it's a criminal statute and void for vagueness, that there are Second Amendment claims, they are just specious at best because of this is a reasonable, narrowly tailored statute. And how is he covered? How is he covered under that statute? Because, Your Honor. What language covers him? Although counsel stated to you. No, I didn't ask. I asked you. It is defined in the statute. 74C-6 defines what a security guard and patrol registrant's duties are. It is defined. It's clearly defined. And one of those things, as minor as it may seem, is directing the public. In his deposition, he stated that he was directing patrons to and from their cars to make sure they were safe. And that is in 74C-6. There are three sections of enumerated duties in there. And he clearly followed it. And so private protective services duties is defined? Yes, sir. Okay. Well, certainly. Does that person have to be paid by the company to be covered by the statute? Well, it says there's two different ways. And this is what is. I didn't. You'd help yourself to do an answer. Yes, it says contract and hired. The thing about it is the registrant can't just work on his own. The registrant must work for a licensee. That is the point I want to make. So a person who just does it because he wants to be a good Samaritan can stay in there armed and do it all he wants to? Well, it says that that's probably true because it's on a contract basis. It presumes money changes hands. So, yes, Your Honor, if they were doing it voluntarily, they could do it, Your Honor. This plaintiff could have stood there and done exactly what he did, dressed as he was, with the gun, and done everything he wanted to if he was just doing it because he wanted the experience. But he has to get paid to fall within the statute. That is correct, Your Honor. So in this instance, what is being missed here, though, is we've got another category, and it's called proprietary. And that is for people that have their own security under them, but still their armed security still has to be registered with us. So these bars, such as Club Calypso, are considered proprietary. They don't have to be licensed. Counsel is incorrect. They do not have to be licensed. But their guards have to be registered, and there's no better evidence than the statute. She cited 14-269.3, where it talks about being hired, which is your contract, or being registered, which is your person working for a proprietary company. Club Calypso could get on our list of proprietary, along with Belks and a bunch of hospitals and some churches and a lot of people that are proprietary that have armed security guards. But no one, no one in North Carolina can work armed without being registered with this board, armed for pay, armed for pay. And I think that is the distinction that counsel is missing here. And as I say, the 14-269.2 points it out, because it uses a term of art that's particular only to this statute, and that is registration. And this individual was not registered. There's no exemption. I have looked at all the Second Amendment cases. You would have to go far, far, far, far of any of the cases. Heller, Macinandura, and I hope I pronounced that correctly, or any of the other cases, you all went through the status of the law in the recent Colby v. Hogan decision. There is no, there is not a scenario in which there should be a violation of the Second Amendment here or equal protection, because as to equal protection, everybody is treated the same. So all of the constitutional issues raised by her, all hinge on the plain language Judge Shed that she made. And the district court found there was probable cause for the arrest, what happened here. And you think that finding of probable cause then puts to rest all the causes of actions in this complaint? Again, and my time is out, may I answer? Again, except for those issues that can be raised, I think it does not wash the constitutional issues. Okay. Because he did not address them. But everything else, yes, the torts, the basics. State claims. The state claims. State causes of action. I think you've always got a constitutional claim. Okay. Anything else? Thank you. Mr. McDonnell. Thank you, Your Honor. My name is Bob McDonnell. I'm a member of the Mecklenburg County Bar. And I did, for the record, want to introduce Ms. Earnhardt, who is with the Attorney General's Office. We're going to get her up here yet. Your Honor, I represent the four police officers who were sued. Those police officers were veterans of CMPD. They worked in a special unit that dealt with not only regular law enforcement activities, but they also had authority under an agreement with the Mecklenburg County ABC Commission to go into ABC-permitted premises to check for- So your argument is no constitutional violation or, at a minimum, qualified immunity. Yes, sir. Absolutely. This particular case, they were checking security out in a parking lot. They drove up. There was no fence. They saw Mr. Kelly standing in the parking lot. He was dressed in black. The weapon was on his chest. They approached him. They asked him if he was licensed. He told them he was not licensed. And that the law did not apply to him. And they checked- I bet officers love to hear that, don't they? Yes, sir. And in this particular case, what is interesting in one of the arguments that the plaintiff makes is that the officer should have checked that out. And that's just- that doesn't happen. In this particular case, there is no reported case which substantiates the plaintiff's position. The plaintiff was found not guilty in a state district court in a similar charge, but there is no record of that. There's nothing to say why the judge found him not guilty. In this court, I'm sure some of you practiced in the district courts at one point in time and there is no record there. Cases are dismissed. People are found not guilty because people don't show up. And in the court docket, it doesn't show that. So these officers were just- Some of us might be glad they don't keep records there. Well, yes, sir. I think that's probably true. But this particular case was just a ho-hum, let's check security in these parking lots. We had had some shootings. So we're going to go out and run that operation. Your claim is the statute requires registration, which he didn't have. Yes, sir. Or at least two judges thought there was probable cause to believe that he could be arrested. So the officer shouldn't be held to any higher standard than that. That's absolutely correct. And I'd like to comment about the probable cause on the state claims. Sure. I would like to address that to the court. When you look at the claims, if you look at abuse of process, you look at trespass to chattels, conversion, negligent hiring. But let's look at abuse of process, trespass to chattels, and conversion. There is an underlying premise in all of those cases that the defendant did an illegal act that in abuse of process, it was accomplished for an ulterior purpose. Probable cause is going to put the damper on that claim. On the claim of trespass to chattels, it requires that the person took the property without authority. And Judge Whitney, in the suppression hearing, found that it was a good seizure. So they had the authority to take it. The negligent hiring, to get there, you'd have to show that the officers were incompetent and the city knew that. What about intentional infliction? Was that just against Ms. Connor? Intentional infliction of emotional distress? Yes, ma'am. A good point and a good question. I want to address that. The context of all this is that after Mr. Kelly was arrested by the CMPD officers and he was taken to the district office on North Tryon, they had a van pick him up and take him to the law enforcement center. What happened is that the U.S. Attorney's Office found out about the incident and they investigated and then they brought the federal indictment against him. And when he appeared in front of Judge Kayer, who set the bond for him, he didn't put him in the county jail. He let him stay with his dad. I'm not quite sure. Is this tying into my question? Yes, ma'am. Yes, ma'am. I think it will. The claim that he had for the intentional infliction of emotional distress, in his deposition he talked about the events that occurred while he was on house arrest. And he was on house arrest because of the federal charges that had nothing to do with the state charges and the charges that those officers brought. And, you know, in the joint appeal or the joint appendix, you will see in there that he never had any treatment, he never had any diagnosis to substantiate a Johnson claim for the intentional infliction of emotional distress. So we just believe, and I think- If there was any evidence of intentional infliction of emotional distress, they had the wrong parties? They had the wrong party. And, you know, he was asking the deposition, well, why didn't you go back to Judge Kayer and say, Judge, I need this? And the response was, well, the judge wouldn't do that. They'd put me back in prison again. And, you know, and interestingly enough, throughout this entire process, he has had the same lawyer the entire time. And so we just simply think, as to these officers and as to Ms. Conner, they were simply doing what they were supposed to be doing that night, and that's checking for violations of the statute. Does the court have any other questions? No, thank you very much. Thank you. Ms. Everson, you have five minutes. If you want to use them, and I take it that you do. I'll try to be brief, Your Honor. Thank you. Just with respect to some of the events. Are those police officers, you don't challenge that they're public officials, do you? Do not at all. Not at all. You don't challenge that? Absolutely, they're public officials. They're sworn. Are they entitled to qualified amenity? Well, we actually withdrew the appeal as to every officer except Detective Curl. And that brings me to just one point I want to make briefly. It's been brought to this Court's attention about the district court and magistrate's judge finding probable cause in this case. What hasn't yet been brought to the Court's attention, at least not today, is that there were only two officers that testified before that district court judge. This is in the federal suppression hearing that's been mentioned in the briefs. Detective Curl was one of those officers. Detective Curl testified that he saw Mr. Kelly with a gun that night, that he saw a gun in his car, that he was familiar with that Private Protective Services Act. All of these things before. And that's part of what led to that probable cause determination. It's undisputed that Investigator Conner did not produce any of the documents between the Private Protective Services Board and the legislation trying to get the law changed. What is the point of all this? I don't understand. Certainly, Your Honor. The law in the state of North Carolina has been recognized by this Court is that probable cause determinations do not shield public officials even from 1983 actions if those probable cause determinations are procured through their misconduct. And so in this particular situation, Detective Curl testified to things in that suppression hearing that he's testified about completely different in his deposition. He says he never saw a gun, never saw his car, was not familiar with that law, relied on Ms. Conner to tell him when someone was violating it. It's completely different than what was testified to before Judge Whitney. Additionally, prior to the instant suit, the emails between her and her supervisor telling her there's a gap in the law. In fact, her supervisor tells her after advice of counsel they've been told that the law needs to be changed to resolve this gap. And basically, 14-269.3 recognizes that you can be... Do you really think this is a winning argument? You're saying there's conflict in his testimony, maybe impeachable on some of that, there's a gap in the law, her supervisor told her something. Is that the level you have to get to to make your argument? Well, Your Honor, in the second district court trial after he was arrested the second time, it's undisputed that the judge presiding over that trial asked about the legislative history, asked about the intent of the law, and that Ms. Conner was the only person present at that trial who had knowledge of the conflict, of the discussions about changing the law. That's not entirely true. You claim a Brady violation over not giving you the legislative history. That's public record. You can go get it yourself. Well, that's correct, Your Honor, but this court has recognized that there's not a public records exception to the Brady requirement. Oh, no. I mean, if that information is available from other sources, Brady doesn't. And, Your Honor, the emails may have been public record, but they weren't provided and they wouldn't have been accessible to, at that time, the defendant in that trial unless Ms. Conner had produced them. There was a Brady request. There was actually a subpoena directly to Ms. Conner. You know, none of this information was provided. What information are you talking about? I mean, the legislative history, as Judge Floyd points out, is publicly available. There's no special requirement, there's no special obligation on law enforcement to make publicly available information available to a particular party. I understand that with respect to the legislative history documents, Your Honor, but with respect to the internal emails, there's no way that appellant would have known about those emails unless Ms. Conner would have produced them. But the existence of a gap to the extent that one does exist would be an issue for investigation and development of the defendant on the basis of information that was publicly available, surely. Certainly, Your Honor. And just briefly, with respect to the equal protection claim, Ms. Appellant is the only person in the entire state who was arrested for this crime after he was found not guilty who was never allowed the opportunity to challenge that through the administrative process. The Private Protective Services Board admitted in its deposition testimony that it produced all of the information about other people who were charged with this crime. Every single one of those people, which is in the record, their charges were dismissed. They were given cease and desist letters. They were given an opportunity to challenge that law to them administratively, and Appellant was not. Even the Private Protective Services Board admitted in its deposition it was error to do so. The equal protection claim was not addressed by the district court at all with respect to these allegations. The orders actually dismissed the claim and provide any analysis of that. And the board and Ms. Conner... And those other people who were given... Does the record reflect those other people who were given cease and desist letters? Did they admit and come to understand the law did apply to them? Well, they were found not to have violated the statute. The Private Protective Services Board, and it states that in the record. Well, maybe what they... Maybe... Does the record indicate how that was resolved? Maybe they said, is it not a spot in the law? I don't know if this happened. You're violating the law. My gosh, I didn't realize that. I'm going to do what it takes to get right. You know what? You know, we understand. We're going to give you a break on that. What's wrong with doing that? Well, that... There's nothing wrong with doing that, Your Honor. So... But I thought, to this day, your client claims that law doesn't apply to him. Maybe that's why he's treated differently. Well, Your Honor... I'm just saying. I understand. But again, that was... All of that was done in conjunction. So they were arrested and they were given the cease and desist opportunity and all of that at the same time. In this particular situation, Mr. Kelly was arrested. He was found not guilty. He was arrested again. He was not... Never at any point... Why aren't you asking us to assume... What are the differences on the basis of the absence of evidence or information on the record? Well, Your Honor, at least at this stage on the summary judgment motion or motion to dismiss, we believe there are factual disputes as to whether or not the second arrest and investigation was retaliatory in violation of equal protection. Or maybe they thought he was still violating the law. I mean, a person can violate the law.     who get acquitted. And he gets acquitted and he gets acquitted and he gets acquitted and he gets acquitted and he gets acquitted and he gets acquitted and he gets acquitted And if he says why, they get charged again. They get tried again.  And those statutes, Your Honor, have citor requirements. This statute has no citor requirements. But I'm talking about the process but I'll give you 10 seconds to wrap up here. Nothing, nothing further, Your Honor. We'll just rest on the brief with respect to our other argument. Alright. Thank you. Thank you so much. You need a break? We'll step down of great counsel and go to the last argument.
judges: Dennis W. Shedd, Allyson K. Duncan, Henry F. Floyd